UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IRIS BITON,

                        Plaintiff,

-against-

CITY OF NEW YORK, SERGEANT IAN NADEL, POLICE OFFICER LATISHA WRIGHT,

                        Defendants.

**MEMORANDUM AND ORDER**
17-cv-3981 (LDH) (JO)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

      Plaintiff Iris Biton brings the instant action against the City of New York, Sergeant Ian Nadel, and Police Officer Latisha Wright (collectively "Defendants") under 42 U.S.C. § 1983, arising from her arrest by Sergeant Nadel and Officer Wright in April 2013.[1] Plaintiff asserts two claims: *first*, that Officer Wright and Sergeant Nadel maliciously prosecuted her in violation of Section 1983; and *second*, that Officers Wright and Sergeant Nadel acted pursuant to a municipal policy or custom of the City of New York (the "*Monell* claim"). Defendants move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's *Monell* claim.

## BACKGROUND[2]

      Plaintiff alleges that on the morning of April 9, 2013, she left her house to get coffee. (Am. Compl. ¶ 9, ECF No. 15.) Plaintiff claims that as she was walking back to her house, she saw her landlady, Judith Blumenthal, grab Plaintiff's daughter, Jessica Francis, while Plaintiff's

---

[1] At the time that Defendants brought this motion, Sergeant Nadel had not yet been served with process. Sergeant Nadel was served on April 10, 2018. (ECF No. 25.) On May 21, 2018, Defendants requested that the Court deem, *nunc pro tunc*, their motion as having been made on behalf of all Defendants, including Sergeant Nadel. (ECF No. 27.) Defendants' request is granted and the Court deems Defendants' motion to dismiss as having been made on behalf of all named defendants.
[2] The following facts are drawn from Plaintiff's complaint, and are assumed to be true for purposes of this Memorandum of Decision and Order.

grandchildren and their two cousins, ages 4 and 8, were standing nearby. (*Id.*) Shortly thereafter, police officers arrived on the scene. (*Id.* ¶ 10.) Plaintiff alleges that upon the officers' arrival, an unidentified police officer informed Plaintiff that she had to arrest Ms. Blumenthal and Ms. Francis. (*Id.* at ¶¶ 10-11.)

A few minutes later, Officer Wright approached Plaintiff and her daughter, escorted them across the street from their home and instructed Plaintiff to take the children to school. (*Id.* at ¶ 12.) Plaintiff responded that the children did not want to leave their mother. (*Id.*) Ms. Francis explained to Officer Wright that as she was taking her children to school, Ms. Blumenthal started videotaping her. (*Id.* at ¶ 13.) Ms. Francis further explained that she asked Ms. Blumenthal to leave her alone and, in response, Ms. Blumenthal grabbed her. (*Id.*) According to Plaintiff, Ms. Francis had a long scratch on her arm that was bleeding. (*Id.*)

Around this time, several additional police officers arrived. (*Id.* at ¶ 14.) Plaintiff alleges that approximately six or seven officers were speaking with Ms. Blumenthal, but only Officer Wright was talking to Ms. Francis. (*Id.*) Plaintiff asked Officer Wright why she was the only police officer speaking to Ms. Francis, but Officer Wright did not respond. (*Id.*) Plaintiff asked Sergeant Nadel the same question, but according to Plaintiff he also ignored her. (*Id.* at ¶ 15.) After about twenty minutes, Plaintiff stated that she was going to take the children to school. (*Id.* at ¶ 16.) However, Sergeant Nadel told Plaintiff that she was not permitted to leave. Plaintiff asked Sergeant Nadel why she could not take the children to school. (*Id.*) Sergeant Nadel instructed Plaintiff that someone else would take the children and then looked at Officer Wright and pointed to one of the police vehicles. (*Id.*) Officer Wright proceeded to arrest Plaintiff. (*Id.*)

Plaintiff alleges that she was driven to the 66th Precinct by two police officers. (*Id.* at ¶

17.) During the car ride to the precinct, Plaintiff repeatedly asked the officers why she had been arrested. (*Id.*) According to Plaintiff, neither of the officers responded. (*Id.*) After arriving at the precinct, Plaintiff alleges that Sergeant Nadel threatened to place her in solitary confinement. (*Id.* at ¶ 18.) Plaintiff's daughter was also arrested and taken to the same precinct. (*Id.* at ¶ 20.) According to Plaintiff, Sergeant Nadel told her daughter that he did not like Plaintiff and her daughter. (*Id.*)

Plaintiff was charged with assault in the third degree, disorderly conduct, and endangering the welfare of a child. (*Id.* at ¶ 22.) Plaintiff was arraigned on April 10, 2013 in Kings County Criminal Court and released on her own recognizance. (*Id.* at ¶ 23.) Following trial, Plaintiff was acquitted of all charges on July 1, 2014. (*Id.*)

## STANDARD OF REVIEW

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that [defendants are] liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [defendants have] acted unlawfully." *Id.* A court considering a 12(b)(6) motion must take factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Id.*

At the motion to dismiss stage, a court "must merely determine whether the complaint itself is legally sufficient." *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999) (internal citation omitted). "It is not [a court's] function to weigh the evidence

that might be presented at trial." *Id.* "The issue before [a court] on a Rule 12(b)(6) motion 'is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* (citing *Villager Pond Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996)). "Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6)." *Id.* (citing *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)).

## DISCUSSION

A municipality can only be held liable for a violation under § 1983, known as *Monell* liability, if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A prerequisite to a *Monell* claim is a violation of the plaintiff's constitutional rights. In other words, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

"*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original); *see also Claudio v. Sawyer*, 409 F. App'x 464, 466 (2d Cir. 2011) (holding that "a [*Monell*] claim must be based on an independent constitutional violation by a state actor"); *Tyk v. Police Officer Eric Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) ("Because [plaintiff] has not

established an underlying violation of his constitutional rights, his § 1983 claims against the City necessarily fail.").

Defendants move to dismiss Plaintiff's *Monell* claim, arguing that Plaintiff fails to adequately allege: (1) the existence of policy or custom by which the NYPD arrests individuals pursuant to quotas without probable cause and (2) that this policy or custom harmed Plaintiff. The Court finds that Plaintiff fails to state a *Monell* claim for a different reason: Plaintiff fails to adequately allege a custom or policy giving rise to Plaintiff's alleged malicious prosecution.

Here, Plaintiff alleges that the NYPD and the 66th Precinct have a policy, practice, and/or custom of arresting individuals without probable cause to satisfy arrest quotas. (Am. Compl. ¶ 33.) In other words, Plaintiff alleges that the NYPD has a policy of falsely arresting individuals. But Plaintiff's amended complaint does not state a claim for false arrest. Instead, Plaintiff alleges only a malicious prosecution claim. Unlike a false arrest claim, which focuses on whether police officers had probable cause to effect an arrest, a malicious prosecution claim requires proof of "the initiation or continuation of a criminal proceeding against [a] plaintiff." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotations omitted). The Second Circuit has made clear: "[t]o initiate a prosecution, a defendant must do more than report the crime or give testimony. He must 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Id.* at 163 (quoting *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000)).

Assuming, as the Court must at the motion to dismiss stage, that the NYPD has a policy of falsely arresting individuals to meet quotas as Plaintiff alleges, Plaintiff does not allege that such a policy extends to the false initiation or continuation of criminal proceedings. Plaintiff alleges no facts that any arrest quota policy or custom somehow compels NYPD officers to "play

an active role" in any subsequent prosecution. If Plaintiff had pursued *Monell* liability with respect to a claim for false arrest, the claim plausibly could have survived a motion to dismiss. No such claim is pleaded, however, and in its absence, *Monell* liability arising from any purported false arrest claim cannot be pursued.[3]

It is not enough to simply identify an allegedly unconstitutional policy or custom. Instead, "[i]n order to impose § 1983 liability upon a municipality, a plaintiff must demonstrate that any constitutional harm suffered was the result of a municipal policy or custom." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). Plaintiff fails to do so here, and therefore, her *Monell* claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's *Monell* claim is GRANTED.

SO ORDERED:

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
September 10, 2018

---

[3] Plaintiff's July 5, 2017 complaint alleged a false arrest claim. (*See* ECF No. 1.) Following a December 19, 2017 conference regarding Defendants' anticipated motion to dismiss at which the Court indicated that Plaintiff's false arrest claim was likely time-barred, Plaintiff amended her complaint, voluntarily withdrawing her false arrest claim. To permit Plaintiff to allege a false arrest claim under a *Monell* theory when Plaintiff's false arrest claim against the individual defendants is time-barred would allow Plaintiff to circumvent the applicable statute of limitations.